FILED
DISTRICT COURT

# In the United States District Court OCT -2  P 2: 09
## for the District of Utah, Central Division

| | |
|---|---|
| Lisa D. Kesner, | |
| Plaintiff, | Case No. 2:05cv00289JTG |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| JO ANNE B. BARNHART, | |
| Defendant. | |
| | Judge J. Thomas Greene |

This case is before the Court on plaintiff Lisa D. Kesner's application for

Disability Insurance Benefits. After a hearing, the Administrative Law Judge (ALJ) denied

plaintiff's application. Plaintiff timely filed a request for review by the Appeals Council,

submitting new, material, and chronologically relevant evidence. The Appeals Council

considered the record before it, including the new evidence, and affirmed the ALJ's Decision.

Because substantial evidence does not support the conclusion reached by the ALJ, this Court

reverses the ALJ's Decision and finds that plaintiff is disabled and entitled to benefits.

## I. Procedural History

Plaintiff, Lisa D. Kesner, filed an application for Disability Insurance Benefits on

January 22, 2003 alleging an onset date of November 19, 2002. This application was denied

initially, and upon reconsideration. A timely request for a hearing before an Administrative Law

Judge (ALJ) was filed and the hearing was held in Salt Lake City on September 1, 2004. The

ALJ denied her claim in an issued Decision dated October 28, 2004. Plaintiff Kesner filed a

timely request for review by the Appeals Council, and on January 28, 2005, the Appeals Council

denied review. On February 10, 2005, Kesner submitted a new letter from plaintiff's treating

physician and requested that the Appeals Council reconsider its decision. The Appeals Council

declined to reopen the ALJ's Decision and denied plaintiff's request on March 29, 2005.

Plaintiff has exhausted administrative remedies, and filed this suit in federal court pursuant to 42

U.S.C. 405(g).

## II. Factual Background

Plaintiff is a 47 year-old woman with a high school education who has previously

worked as a truck driver, a water master, and an apparel manager. Plaintiff's medical records

indicate that back pain was first diagnosed on October 22, 2002. Plaintiff quit her truck driving

job sometime during November 2002. She alleges that her disability is due to back and hip pain,

scoliosis, deafness in the right ear, hypertension, hernia, hemorrhoids, migraines, arthritis, and

limited ability to stand, sit, walk, lift, or bend.

## III. The Five Step Sequential Process

A five step process to determine whether a plaintiff is disabled is set forth at 20

C.F.R. § 416.920:

1) If the claimant is performing substantial gainful work she is not disabled.

2) If the claimant is not performing substantial gainful work, her impairment(s) must be severe before she can be found to be disabled.

3) If claimant is not performing substantial gainful work and has severe impairment(s) which have lasted or is expected to last for a continuous period of at least twelve months, and her impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, 20 C.F.R. § 404, the claimant is presumed disabled without further inquiry.

4) If the claimant's impairment(s) do not prevent her from doing her past relevant work, she is not disabled.

5) Even if the claimant's impairment(s) prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that would accommodate her residual functional capacity and vocational factors, she is not disabled.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity (SGA) since her onset date.

At step two, the ALJ found that plaintiff's medical evidence of scoliosis and degenerative disc disease were "severe" impairments within the meaning of the Regulations. The ALJ reviewed plaintiff's medical record, noting that her treating physician Dr. Christian had diagnosed back pain on November 19, 2002, and severe scoliosis on December 27, 2002. (R. at 18). In a consultative examination on April 5, 2003, Dr. Diaz noted that plaintiff had significant limitation in her range of motion with constant complaints of pain, and an x-ray showed significant rotoscoliosis with degenerative disk and joint disease. (R. at 19). In May 2003, Dr. Christian diagnosed severe low back pain, headaches, scoliosis, and said that plaintiff could not work. (R at 20).

At step three, the ALJ found that the plaintiff's "severe" impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, 20 C.F.R. § 404 because "[t]he claimant has not presented the specific clinical and laboratory findings required by these sections or any other sections." (R. at 21).

At step four, the ALJ found that the plaintiff could not perform her past relevant work, finding that the plaintiff's past light to medium work exceeded her current residual functional capacity for sedentary work activity with limitations. The ALJ found it important to

3

note that the plaintiff was not always compliant with her treatment, that she was not cooperative with medical examinations required to assess her allegations, and that she exaggerated her symptoms. (R. at 22-23). The ALJ considered reports and opinions from Dr. Christian, the plaintiff's treating physician, but did not give his opinion weight because "determinations of disability are reserved to the Commissioner, there are conflicting diagnostic tests, and he does not support his opinion with detailed evaluations of the plaintiff's limitations." (R. at 23). The ALJ also considered opinions of non-examining State agency medical consultants, but was not persuaded by these opinions because the "State agency physicians did not have the benefit of actually examining the plaintiff or considering the record in its entirety." *Id.* At the conclusion of step four, the ALJ determined that the plaintiff had the residual functional capacity to perform sedentary work subject to the following limitations: she is unable to climb ladders and walk on uneven surfaces, she has limited ability to perform fine manipulation with her right hand, and she is deaf in one ear. *Id.*

The ALJ proceeded to step five where the burden shifts to the government to show that there is other work that exists in significant numbers in the national economy that the plaintiff can perform. At this step, the ALJ relied on the testimony of the vocational expert that given the plaintiff's age, residual functional capacity, educational background, and past relevant work, she could work as a food and beverage clerk, a charge account clerk, and a credit checker, and therefore the plaintiff was not disabled. (R. at 25).

## IV. Issues

1)      Whether the evidence submitted after the ALJ's Decision is new, material, and chronologically relevant, becoming a part of the record this Court can consider in determining whether substantial evidence supports the ALJ's findings?

4

2)      Whether the ALJ properly weighed the opinion of the plaintiff's treating physician?

3)      Whether the ALJ'a credibility determination is legally sufficient in light of the new evidence?

## V. Standard of Review

The Court's review of the Decision is limited to determining whether the "factual findings are supported by substantial evidence in the record viewed as a whole" and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *Threet v. Barnhart*, 353 F.3d 1185, 1189 (10th Cir.2003) (quotations and citation omitted). The Court may consider the specific rules of law that the ALJ must follow in "'weighing particular types of evidence,' but [the Court] will not reweigh the evidence or substitute our judgment for the Commissioner's." *Joyce v. Barnhart*, 2004 WL 214478 (10th Cir. 2004) (citing *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) and *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)).

## VI. Analysis

1.      THE EVIDENCE SUBMITTED TO THE APPEALS COUNCIL IS NEW EVIDENCE THIS COURT CAN CONSIDER IN DETERMINING WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDINGS.

The additional evidence submitted by plaintiff to the Appeals Council becomes a part of the administrative record to be considered when reviewing the Commissioner's final

5

decision, provided that the evidence is new, material, and chronologically relevant. 20 C.F.R.

404.970(b) (2006) requires that the Appeals Council consider new and material evidence that is

chronologically relevant. Whether evidence qualifies as (1) new, (2) material, and (3)

chronologically relevant is a question of law subject to *de novo* review. *Chambers v. Barnhart*,

389 F.3d 1139, 1142 (10th Cir. 2004) (citing *Box v. Shalala*, 52 F.3d 168, 17 1 (8th Cir. 1992)).

If the evidence submitted to the Appeals Council qualifies, the evidence becomes part of the

administrative record to be considered when evaluating whether substantial evidence supports the

Commissioner's decision. *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

       The parties do not dispute that the additional evidence – which consists of letters,

examinations, and MRI reports – is "new." However, plaintiff argues that the additional

evidence is material because it undermines the ALJ's credibility determination. Evidence is

material if there is a reasonable possibility that the new evidence would have changed the

outcome. *Chambers*, 389 F.3d at 1144 (quoting *Lawson v. Chater*, 83 F.3d 432, 1996 WL

195124, at \*\*2 (10th Cir. 1996)). In *Chambers*, new evidence consisting of pulmonary test

results was not considered material since the plaintiff had not complained of breathing problems

as part of her alleged disability. *Id*. The court concluded that the new evidence was immaterial

because it would have no bearing on the question of alleged disability and there was no

reasonable possibility that the evidence would have changed the outcome. *Id*.

       In this case, the diagnostic MRI reports and physical examination are material

because they present new evidence regarding symptoms and physical limitations that plaintiff

complained of as part of her alleged disability. (R. at 157-167). Because the ALJ specifically

noted a lack of "detailed evaluations of the claimant's limitations" and "conflicting diagnostic

tests," the new evidence raises a reasonable possibility that the evidence would have changed the outcome. (R. at 23). Plaintiff further argues that the additional evidence is clearly chronologically relevant. New and material evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's Decision. § 404.970(b). Here, the additional evidence is chronologically relevant because the materials contain evidence showing that one of plaintiff's legs was shorter than the other. Plaintiff had testified to this during the ALJ hearing, and the ALJ in her Decision specifically alluded to the absence of such medical evidence. (R. at 23).

In this case, the Appeals Council did consider the new evidence submitted by plaintiff. The Appeals Council informed plaintiff that it had:

> considered your contentions raised in your letter dated February 10, 2005, as well as the additional progress notes from Dr. McKay Christian, dated February 9, 2005, but concluded that neither the contentions nor the additional evidence provides a basis for reopening and changing the decision. The new evidence does not show that your physical impairments cause more work-related limitations than found by the ALJ. We found no reason under our rules to reopen and change the decision.

(R. at 4). Thus, the Appeals Council did consider the additional evidence in making its decision and plaintiff's argument for remand based on failure of the Council to review the new evidence pursuant to 42 U.S.C. 405(g) sentence six is not applicable. *See Chambers*, 389 F.3d at 1142 ("if the evidence does qualify as new, material, and chronologically relevant and the Appeals Council *considered it in connection with the plaintiff's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the* Commissioner's denial of benefits under the substantial-evidence standard.").

Regardless, because plaintiff's additional evidence sufficiently qualifies as new, material, and chronologically relevant; and the Appeals Council considered it in connection with plaintiff's request for administrative review, the evidence becomes part of the record that this Court assesses in evaluating the Commissioner's denial of benefits. As discussed below, we disagree with the Appeals Council, finding that the new evidence changes the outcome of the case, as the ALJ's decision is no longer supported by substantial evidence.

2.      THE ALJ DID NOT GIVE CONTROLLING WEIGHT TO THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN.

In assessing the plaintiff's residual functional capacity, the ALJ must consider any medical opinions from acceptable medical sources that reflect judgments about the nature and severity of the impairments and the resulting limitations. 20 C.F.R. § 404.1527(a)(2). "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (following 20 C.F.R § 404.1527(d)). When an ALJ rejects a treating physician's opinion, he must articulate "specific, legitimate reasons for his decision." *Id*. (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they 'outweigh' the treating physician's report, not the other way around." *Goatcher v. United States Dep't of Heath & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir.1995) (quotations and citations omitted).

8

In her decision, the ALJ discounted Dr. Christian's opinion that plaintiff is unable to do any significant gainful employment. After noting Dr. Christian's diagnoses and judgment, the ALJ states that she did not give Dr. Christian's opinion weight because: "[1] determinations of disability are reserved to the Commissioner, [2] there are conflicting diagnostic tests, and [3] he does not support his opinion with detailed evaluations of the claimant's limitations." (R. at 23). These reasons are insufficient under the "specific and legitimate" standard adopted by the 10th circuit. *Hamlin*, 365 F.3d at 1215.

The first reason fails because the ALJ improperly characterizes Dr. Christian's opinion as a determination of disability reserved to the Commissioner. The ALJ apparently based this finding on a letter in which Dr. Christian opined that plaintiff was unable to do her job and precluded from any gainful employment. (R. at 129). However, those statements were taken out of context and constituted only a portion of a letter that cannot be readily construed as a determination of disability. When read in context, Dr. Christian's opinion is better viewed as a judgment about the nature and severity of plaintiff's impairments and the resulting limitations, which is the type of opinion that the ALJ is specifically required to consider under § 404.1527(a)(2). *Id.*

The second reason that there are conflicting diagnostic tests is not sufficiently specific. The medical opinions before the ALJ came from three sources: (1) Dr. Christian, plaintiff's treating physician for over 10 years, (2) Dr. Diaz, who administered a consultative physical evaluation at the request of the state disability determination services, and (3) a Residual Functional Capacity Assessment and physical done by two non-examining Department of Disability Services (DDS) physicians. The ALJ was "not persuaded" by the opinions of DDS

9

physicians because they did not actually examine the plaintiff or consider the record in its

entirety. (R. at 23). Thus, those opinions cannot be what the ALJ was referring to as "conflicting

tests." By process of elimination, it appears that the ALJ was relying on Dr. Diaz's opinion to

justify an inconsistency.[1]

Relying on Dr. Diaz's opinion is problematic for two reasons. First, If an ALJ

intends to rely on a nontreating physician or examiner's opinion, they must explain the weight

they are giving to it. *Hamlin*, 365 F.3d at 1223 (following 20 C.F.R § 416.927(f)(2)(ii)). Here,

the ALJ did not explain the weight given to Dr. Diaz's opinion, if any.[2] (R. at 23). Second,

findings of a nontreating physician based upon limited contact and examination are of suspect

reliability. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). As a nontreating physician who

conducted a single consultative examination, Dr. Diaz did not have the benefit of studying

plaintiff's history or prior examinations. In his report, Dr. Diaz noted that he did not view any of

plaintiff's previous MRI's, CT scans, or X-rays. (R. at 109). Moreover, his impressions

regarding the physical limitations of plaintiff's spine were immediately preceded by his own

---

[1]We note that the ALJ never states that she is relying on Dr. Diaz's opinion. In fact, the ALJ does not seem to rely on any physicians opinion at step three aside from her own. However, given that Dr. Diaz had some minor findings that would support the ALJ's conclusion, we will discuss Dr. Diaz's opinion as though the ALJ relied on it.

[2]The Court notes that the ALJ did make one reference to Dr. Diaz when analyzing the medical evidence. The ALJ found it "important to note that the plaintiff was not cooperative with medical examinations required to assess her allegations," because she was unpleasant when she was examined by Dr. Diaz and threatened to strike him. Whether plaintiff was unpleasant is of no consequence in determining her disability. Moreover, it is clear that one of plaintiff's legs is shorter than the other, as presented in the new evidence by Dr. Christian, contrary tp the ALJ's statement that no medical evidence supported that physical situation.

qualification that plaintiff has "MRI films and diagnostic scanning that would be worth while to review." (R. at 112).

In a case with similar facts, the ALJ's reasons for discounting a treating physician's evaluation lacked the requisite specificity even where the ALJ had explained which specific sources were in conflict, but failed to explain what *portions* of the sources conflicted. *Kay v. Barnhart*, 148 Fed. Appx. 711, (10th Cir. 2005). Here, the ALJ has made it impossible to even determine *which* sources are in conflict by failing to state which diagnostic tests conflicted with Dr. Christian's opinion. Moreover, the one potential inconsistency, from Dr. Diaz, in no way outweighs the findings of Dr. Christian, the treating physician.

Finally, the third reason also fails because the new evidence contains a report from Dr. Christian which includes the detailed evaluations of plaintiff's limitations that were previously lacking from his reports. (R. 163). Thus, the ALJ clearly erred in not giving Dr. Christian's opinion controlling weight.

Because the ALJ relies on a single consultative exam performed by a nontreating source to support her residual function capacity determination, while completely discounting the treating physician's opinion, her residual function capacity determination is not supported by substantial evidence. In this case, the ALJ failed to give specific and legitimate reasons for his decision to reject Dr. Christian's opinion. Moreover, the new evidence presented to the Appeals Council rebuts the reasons that were given by the ALJ for discounting Dr. Christian's opinions.

3.          THE ALJ'S FINDING THAT PLAINTIFF'S CLAIMS LACKED CREDIBILITY
            IS INSUFFICIENT AND THE NEW EVIDENCE REBUTS ANY
            CONTENTION THAT PLAINTIFF WAS NOT CREDIBLE REGARDING HER
            DISABILITY.

        The ALJ's credibility determination is not legally sufficient or supported by

substantial evidence because the new evidence undercuts the reasons given by the ALJ for

doubting plaintiff's credibility. When evaluating the ALJ's determination of the plaintiff's

credibility regarding disabling pain, there is a three-part framework to follow:

> "(1) Whether the Claimant established a pain-producing impairment by objective
> medical  evidence; (2) if so, whether there is a 'loose nexus' between the proven
> impairment and the Claimant's subjective allegations of pain; and (3) if so,
> whether considering all the evidence, both objective and subjective, Claimant's
> pain is in fact disabling."

*Joyce*, 2004 WL 214478.  In *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), the court stated

that "credibility determinations are peculiarly the province of the finder of fact, and we will not

upset determinations when supported by substantial evidence." The ALJ should state specific

reasons for doubting the plaintiff's credibility because "findings as to credibility should be closely

and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."

*Id.*

        The ALJ did state her reasons for doubting the plaintiffs credibility by citing

diagnostic tests, comments from examining doctors, and referring to plaintiff's testimony at the

hearing.  However, the new evidence submitted by plaintiff after the ALJ's Decision directly

rebuts evidence that the ALJ found "important to note" in support of her determination that

plaintiff was not credible.  (R. at 22-23).  The ALJ found it important to note that (1) claimant was

not always compliant with her treatment and that (2) claimant exaggerates her symptoms.  *Id.*

12

The ALJ relied primarily on treatment notes written by plaintiff's treating physician Dr. Christian to support her finding that plaintiff was not always compliant with treatment. The notes by Dr. Christian recommended that plaintiff see a surgeon for further evaluation, but the record does not indicate that plaintiff followed through, that plaintiff refused Fosamax-type medications, and that plaintiff refused a mammogram. (R. at 22). However, Dr. Christian's new letter clarifies the meaning of his treatment notes, explaining that none of the abovementioned episodes were of any consequence. He stated that the recommendation to see a surgeon was for rectal bleeding not associated in any way with her disabilities or back and leg problems, that his recommendation was a suggestion primarily for his records and protection, that plaintiff could follow it if she desired, and that he had no concern if she did not follow the suggestion. (R. at 8). Dr. Christian explained that the refusal to take Fosamax was "very understandable" because of potential side effects that plaintiff might suffer. *Id.* Dr. Christian further explained that the refusal of a mammogram was also very understandable and that the mammogram was offered primarily for inclusion in his records. *Id.* Finally, Dr. Christian states that the plaintiff is very compliant, truthful, and does not exaggerate her symptoms. *Id.*

To support the finding that plaintiff exaggerated her symptoms, the ALJ noted that plaintiff testified that one leg was shorter than the other, but that the medical evidence did not confirm her allegation because she did not report this problem to Dr. Diaz nor did Dr. Christian's records note the problem. (R. at 23). However, the new evidence does contain medical evidence of the problem and plaintiff did in fact report the problem to Dr. Diaz. In his new letter, Dr. Christian states that there is definite objective evidence that one leg is shorter than the other and an examination performed by Dr. Bradley Root on December, 14, 2004 confirms the problem. (R.

13

at 160). Furthermore, Dr. Diaz specifically mentions in his report that plaintiff "noted that her one leg is longer than the other." (R. at 109).

      The ALJ's credibility determination properly considered objective and subjective evidence. However, the new evidence erodes many of the ALJ's reasons for finding that plaintiff is not credible. As a result, the ALJ's credibility determination is no longer closely and affirmatively linked to substantial evidence.

## VII. CONCLUSION

      Upon review of the entire record with the new evidence, this Court determines that the ALJ's Decision at steps three and four is not supported by substantial evidence. First, the ALJ's finding that plaintiff is not credible at step three is not legally sufficient, and the new evidence overrides any justification the ALJ used in finding that plaintiff was not credible. Second, the ALJ's finding that plaintiff has the ability to do limited sedentary work is similarly not supported by substantial evidence nor is it in accordance with the correct legal standards. By applying the correct legal standards: giving controlling weight to Dr. Christian's opinion and considering Plaintiff's claims that she can not perform light work to be credible, this Court determines that Plaintiff does not have the residual functional capacity to do limited sedentary work.

      Based upon the foregoing, this Court finds it unnecessary to remand the case for further proceedings. "Outright reversal and remand for immediate award of benefits is

appropriate when additional fact finding would serve no useful purpose." *Dollar v. Bowen*, 821

F.2d 530, 534 (10th Cir.1984).[3]

Consequently, it is

**ORDERED**, that the ALJ's final Decision is REVERSED and that plaintiff is

found to be disabled as of November 19, 2002 and is entitled to Disability Insurance Benefits

under §§ 216(I) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

DATED this 2nd day of October, 2006.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE

---

[3]"The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405.